## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **SCRAMOGE TECHNOLOGY LTD.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil No. 6:21-cv-00579-ADA** |
| | § | |
| **APPLE INC.,** | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER – PUBLIC VERSION</u>

This opinion memorializes the Court's decision on Defendant Apple Inc.'s ("Apple" or "Defendant") Motion to Transfer Venue from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a). Dkt. No. 37. After careful consideration of the relevant facts, applicable law, and the parties' briefs (Dkt. Nos. 67, 72), the Court **GRANTS** Defendant's Motion to Transfer and finds that Mark Rollins lacks credibility before this Court.

## I.    BACKGROUND

Plaintiff Scramoge Technology Ltd. ("Scramoge" or "Plaintiff") filed this lawsuit accusing Defendant of patent infringement. Dkt. No. 1. Scramoge alleges infringement of U.S. Patent Nos. 10,622,842 ("the '842 Patent"), 9,806,565 ("the '565 Patent"), 10,804,740 ("the '740 Patent"), 9,843,215 ("the '215 Patent"), and 10,424,941 ("the '941 Patent") (collectively, "Asserted Patents"). Dkt. No. 1 ¶ 1. Broadly speaking, these patents cover aspects of wireless charging technology including wireless power coils that inductively charge, communication antennas related to power coils, the configuration of the coil, and magnetic layers used in a wireless charger. The accused products include the iPhone 8, 8 Plus, X, XR, XS, XS Max, 11, 11 Pro, 11 Pro Max, SE (second generation), 12, 12 mini, 12 Pro, 12 Pro Max, AirPods (second generation) and

1

AirPods Pro ("Accused Products"). *Id.* ¶¶ 9, 23. The parties later stipulated to a dismissal of the '941 Patent from this case.

Scramoge is an Irish corporation with its principal place of business in Ireland. *Id.* ¶ 2.

Apple is a California corporation with a principal place of business in Cupertino, California and regular and established places of business at 12545 Riata Vista Circle, Austin, Texas 12801 Delcour Dr., Austin, Texas; 12801 Delcour Dr., Austin, Texas; and 3121 Palm Way, Austin, Texas 78758. *Id.* ¶¶ 5-6.

## II.   LEGAL STANDRD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action might have been brought in the transfer destination venue. *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the

cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203.

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 315. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314-315. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III.    REPEAT DECLARANT MARK ROLLINS LACKS CREDIBILITY

Plaintiff argues that Apple's Declarant, Mr. Mark Rollins, provided a vague, incomplete, and generally unreliable declaration. Dkt. No. 67, *passim*. On reply, Apple responds that the attacks on Mr. Rollins are "baseless." Dkt. No. 72 at 1. The Court agrees with Plaintiff and resolves all conflicting evidence, where provided, against Mr. Rollins. The Court credits Mr. Rollins's declaration only for its unrebutted statements.

3

Plaintiff argues that Mr. Rollins repeatedly makes the same type of vague and unreliable statements across multiple declarations. Dkt. No. 67 at 2-3 (citing to similarly vague representations in the Declaration of Mark Rollins in support of Defendant Apple Inc.'s Motion to Transfer Venue, *Billjco, LLC v. Apple Inc.*, No. 6:21-CV-00528-ADA (W.D. Tex. Sept. 10, 2021), Dkt. No. 26-1 (describing Apple's work on Bluetooth Low Energy iBeacon technology and products ranging from the iPhone 4s to the iPhone 12)).

The Court takes these allegations seriously because Mr. Rollins frequently and repeatedly submitted unreliable and misleading declarations to this Court. *E.g.*, Declaration of Mark Rollins in Support of Defendant Apple Inc.'s Motion to Transfer Venue, *Neonode Smartphone LLC v. Apple Inc.*, No. 6:20-cv-00505-ADA (W.D. Tex. Nov. 5, 2020), Dkt. No. 27-3 (describing Apple's work on user interface elements of Apple's smartphones and iPads); Declaration of Mark Rollins, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-665-ADA (W.D. Tex. Dec. 21, 2020), Dkt. No. 34-2 (describing Apple's work on HomePods, AirPods, PowerBeats, Beats Solo, firmware, and source code); Declaration of Mark Rollins in Support of Defendant Apple Inc.'s Motion to Transfer Venue, *CPC Patent Tech. PTY LTD. v. Apple Inc.*, No. 6:21-CV-165-ADA, (W.D. Tex. May 4, 2021), Dkt. No. 22-2 (describing Apple's work on biometric security technology); Declaration of Mark Rollins in Support of Defendant Apple Inc.'s Motion to Transfer Venue, *Gesture Tech. Partners LLC v. Apple, Inc.*, No. 6:21-cv-121-ADA (W.D. Tex. July 30, 2021), Dkt. No. 21-1 (describing Apple's work on camera technology in products including the iPhone 5-12 and many models and generations of iPads); Declaration of Mark Rollins in Support of Defendants' Motion to Transfer Venue, *Red Rock Analytics LLC v. Apple Inc.*, No. 6:21-cv-346-ADA-DTG (W.D. Tex. Aug. 24, 2021), Dkt. No. 45-17 (describing Apple's use of I-Q gain imbalance and 5G transceivers); Declaration of Mark Rollins in Support of Apple's Motion to Transfer Venue,

4

*Logantree LP v. Apple Inc.*, No. 6:21-cv-397-ADA (W.D. Tex. Sept. 3, 2021), Dkt. No. 23-1 (describing Apple's work on the Apple watch); Declaration of Mark Rollins in Support of Defendant Apple Inc.'s Motion to Transfer Venue, *Identity Security LLC v. Apple Inc.*, No. 6:21-cv-460-ADA (W.D. Tex. Sept. 10, 2021), Dkt. No. 27-1 (describing Apple's work on microprocessors, iPhones 5S and later, MacBooks that contain specific chips, and Secure Enclave); Declaration of Mark Rollins in Support of Defendant Apple Inc.'s Motion to Transfer Venue, *Traxcell Tech., LLC v. Apple Inc.*, No. 6:21-cv-74-ADA (W.D. Tex. Sept. 21, 2021), Dkt. No. 34-1 (describing Apple's work on navigation technology); Declaration of Mark Rollins in Support of Defendant Apple Inc.'s Motion for Forum Non Conveniens, *MemoryWeb, LLC v. Apple, Inc.*, No. 6:21-cv-531-ADA (W.D. Tex. Oct. 13, 2021) Dkt. No. 26-1 (describing Apple's work on file and photo organization in iPads, iPhones, iPods, and MacBooks); Declaration of Mark Rollins in Support of Defendant Apple Inc.'s Motion to Transfer Venue, *Future Link Systems, LLC v. Apple Inc.*, No. 6:21-cv-263-ADA-DTG (W.D. Tex. Nov. 17, 2021), Dkt. No. 36-2 (describing Apple's work on ARM-compliant bus and interconnect technology such as AMBA and DRAM memory chips including DDR3, DDR4, GDDR5, GDDR6, and HBM); Declaration of Mark Rollins, No. 6:21-cv-620-ADA (W.D. Tex. Dec. 10, 2021), Dkt. No. 23-1 (describing the use of beamforming technology in iPhones, iPads, MacBooks, Macs, and Apple TV devices); Declaration of Mark Rollins in Support of Defendant Apple Inc.'s Motion to Transfer Venue, *Sonrai Memory LTD. v. Apple, Inc.*, No. 6:21-cv-401-ADA (W.D. Tex. Dec. 29, 2021), Dkt. No. 29-2 (describing the use of charge pump circuitry in Apple's products); Declaration of Mark Rollins in Support of Apple Inc.'s Motion to Transfer Venue, No. 6:21-cv-603-ADA-DTG (W.D. Tex. Feb. 11, 2022), Dkt. No. 29-1 (describing Apple's work on wireless voice and data communication technology used in

iPhones, iPads, Apple TV, and Apple Watch).[1] He submits his declarations to support venue motions, not to qualify as a technical expert.

Mark Rollins works as a finance manager at Apple and works at Apple's office in Cupertino, California. Dkt. No. 37-1 ("Rollins Decl.") ¶ 1. Based on the volume of his declarations, he also works as Apple's professionally paid venue witness, preparing two or three venue declarations per month. Adequate preparation for all these declarations requires him to have spent weeks or months reviewing patent complaints, asserted patents, and infringement contentions so he could search for and review the relevant corporate documents covering technologies from Bluetooth to biometric security to OLED displays, and then identify and speak with engineers across products from the iPhone 4-12 to MacBooks to Apple Watches to AirPods. The frequency at which he supplies declarations on a wide scope of unrelated, technologically complex topics leads the Court to give him no credibility. Mr. Rollins must rely on his attorneys to selectively spoon feed him information to accomplish what he does. The Court gives this professional venue witness the same skepticism that it gives to a professional, career expert witnesses who repeatedly works only for a single client.

Mr. Rollins began working as a finance manager at Apple in 2019. Rollins Decl. ¶ 1. Based on this statement, the Court finds that he lacks personal knowledge of Apple's operations and product development before 2019 and that he lacks personal knowledge of Apple's operations outside of financial topics. To make up for his lack of personal knowledge, Mr. Rollins routinely makes his declaration based on a combination of his personal knowledge, his review of corporate

---

[1] This string cite omits supplemental declarations, declarations before Nov. 5, 2020, recent declarations not yet examined by the Court, and other various declarations submitted by Mr. Rollins. The quantity and scope of declarations by Mr. Rollins far exceeds what the Court identifies here.

records maintained by Apple, and discussions with Apple employees. Rollins Decl. ¶ 2. In other words, Mr. Rollins reviews attorney-selected documents and talks to attorney-selected witnesses to form his beliefs. The Rollins Declaration does not identify which corporate records Mr. Rollins reviewed.

As a result of his preparation, Mr. Rollins routinely offers information about topics a financial manager would typically not know. A financial manager at Apple might naturally know about Apple's profits, royalties, the locations of financial statements, and the locations of other Apple employees with financial information related to damages. The Rollins Declaration purports to state the locations of technical and marketing data stored typically known only to respective custodians of those documents, such as engineers and marketing personnel. Rollins Declaration ¶ 7. Mr. Rollins identifies the names and locations of engineers typically known to human resources personnel or engineering managers. *Id.* ¶¶ 6-12. The Rollins Declaration offers expert opinions that certain engineers' work is unrelated to the accused technology in asserted patents. *Id.* It offers legal predictions about witnesses who will appear at trial, as typically decided by attorneys after the conclusion of discovery. *Id.* ¶ 13. His attorney-assisted declarations routinely use the Bluebook format to cite documents. *Id.* ¶ 5 (*"See, e.g.,"*). The Rollins Declaration states technical facts typically known only to electrical engineers and typically admissible only after expert qualification:

> Qi charging uses in-band communications that enables the charged device to communicate with the charger. More specifically, Qi charging uses a power transmitting coil in the charger that is inductively coupled to a power receiving coil in the charged device. During the charging process, the charged device can, for example, alter the impedance of the power receiving coil which can be sensed by the charger via the inductive couple. Thus, during charging the charged device communicates with the charger via the inductive couple (i.e., in-band communications). Data including the need for more power, less power, device compatibility, digitized data, etc. can be transmitted.

7

*Id.* ¶ 11 n.1.

Worst of all, the Rollins Declaration uses language that carefully limits the scope of declared facts to his personal, selectively fed knowledge. For example, the Mr. Rollins's supplemental declaration states, "I am not aware of any Apple employees located in WDTX who worked on the research, design, or development of the Accused Features." Dkt. No. 72-1 ¶ 3. Then, his qualified statements are cited by Apple's attorneys in transfer motions as though they are authoritative truths. *E.g.,* Dkt. No. 72 at 1 ("Apple's sources of proof are located in or around NDCA. There are no sources of proof located in WDTX. *See* Mot. at 10; Rollins Decl. ¶ 3.")[2] The only evidentiary value that paragraph three of the supplemental Rollins declaration offers is that one attorney-prepared, financial manager at Apple lacks personal knowledge about the thousands of Apple engineers who work in the WDTX—information that a financial manager at Apple has no reason to know without thorough investigation. Except for a vague statement that he reviewed unidentified corporate records and spoke to certain employees, the Rollins Declaration contains no description of the methodology he used to find all Apple engineers who work in WDTX and to then determine their relevance. Rollins Decl. ¶ 2. So, Court has no reason to rely on Mr. Rollins as an authoritative or knowledgeable declarant on this topic.

As an example of an uninformed statement, Mr. Rollins declares, "[t]o the best of my knowledge . . . the Apple employees with relevant information regarding the Accused Features and Accused Products are located in NDCA, San Diego, CA, and Auckland, New Zealand" based on his "personal knowledge, my review of corporate records . . . and/or my discussions with Apple

---

[2] Apple's reply brief (Dkt. No. 72) uses "Rollins Decl." to refer to Dkt. No. 72-1.  Apple's opening brief (Dkt. No. 37) uses "Rollins Decl." to refer to Dkt. No. 37-1.

employees." Dkt. No. 37-1 ¶¶ 2, 17. Scramoge convincingly rebuts Mr. Rollins's statement by identifying six relevant Apple witnesses located in Austin (Alexander Pollard, John Tolman, Matthew Marks, Jeremy Meyers, Zao Yang, and Andrew O'Connell) and by supporting each argument with evidence. Dkt. No. 67 at 7-8 (citing exhibits). Thus, Mr. Rollins must not have been given any corporate records that mention these Apple witnesses nor talked to individuals before making his declaration. The Court finds that the "best" of Mr. Rollins's knowledge is based on a deficient investigation.

In summary, the scope, content, and frequency of declarations submitted by Mr. Rollins shows that they are attorney-crafted documents full of hearsay with little to no evidentiary value.[3] Despite serious problems with large swatches of the Rollins Declaration, Scramoge's Opposition only asks the Court to give no weight to certain contested parts of the Rollins Declaration. The Court finds this appropriate. In its analysis below, the Court only credits the unchallenged portions of the Rollins Declaration.

## IV.   ANALYSIS

### A.   Plaintiff could have brought this case in the Northern District of California

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue. Defendant asserts that this case could have originally been brought in the NDCA because Defendant has its headquarters there. Plaintiff does not contest

---

[3] As a trial court intimately familiar with the facts in cases before it, this Court noticed Mr. Rollins's offenses across many cases and has long treated Mr. Rollins with skepticism, especially given Apple's history of avoiding discovery obligations. *E.g.,* Dkt. No. 67 at 4 (describing Apple's refusal to fully respond to a venue interrogatory). Scramoge is the only recent plaintiff to seriously challenge Apple's repeated use of similar declarations by Mr. Rollins. The history detailed herein exposes the offenses in Mr. Rollins's sealed declarations so that other courts and administrative agencies can similarly discount his credibility.

this point. This Court finds that venue would have been proper in the NDCA. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the WDTX.

1.   **The private interest factors favor transfer.**

   a.   **The relative ease of access to sources of proof favors transfer.**

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc*., 979 F.3d 1332, 1340 (Fed. Cir. 2020).

   i.   The ease of accessing physical evidence favors transfer

Mr. Rollins declared that Apple's paper files "reside on local computers and/or serves either located in or around NDCA or accessible in NDCA." Rollins Decl. ¶¶ 7, 12, 16. Plaintiff correctly points out that this statement in the Rollins Declaration makes no sense because paper files do not reside on computers. Mr. Rollins did not identify any paper files with particularity, and Apple's Reply did not do so either. Thus, the Court gives no weight to the location of nonexistent paper files that supposedly reside on computers.

Mr. Rollins declares that "relevant hardware components associated with the Accused Features were developed and tested in California and New Zealand." *Id.* ¶ 7. Plaintiff does not have evidence to the contrary but argues that Mr. Rollins's declaration fails to identify the location of the hardware today. In its reply, Defendant fails to identify the specific nature or location of

hardware components today but argues that any actual hardware would still be in California or New Zealand. Because Mr. Rollins's declaration about the testing location of the hardware remains unrebutted and because Plaintiff has not supplied the Court any evidence showing that the hardware has moved to some other location, the Court finds that it is likely that physical testing evidence remains in California and New Zealand. This vaguely identified hardware somewhere in California causes this factor to favor transfer.

ii.   The ease of accessing electronic evidence favors transfer

Scramoge does not challenge Mr. Rollins's personal understanding that "electronic documents concerning the Accused Features reside on local computers and/or serves either located in or around NDCA."  Rollins Decl. ¶ 7. Apple argues that Mr. Rollins must be correct because the NDCA is where the research, design, and development of the accused products took place. Scramoge argues that any electronic evidence in servers in the NDCA would be equally accessible from Apple's campus in Austin within the WDTX. Because Mr. Rollins's statement remains unrebutted by other evidence, the Court finds that Apple likely has some relevant electronic documents stored in the NDCA.

Scramoge notes that Apple refused to respond to an interrogatory that sought to identify each of Apple's "data servers that store documents related to any components/materials of the Accused Products."  Scramoge did not seek to compel a response to this request or ask for an adverse inference that some of these data servers are in Austin. Instead, Scramoge argues that remote access to electronic documents from Apple's Austin campus must be convenient because Apple also remotely accesses its electronic documents from New Zealand. It true that Apple will likely have similarly easy access to its own electronic documents stored in the NDCA from Apple's campus in Austin *if Apple has employees there* authorized to access the electronic documents.

With respect to the same defendant, the Federal Circuit ruled that the correct analysis under this factor is look to the location of Apple's servers in combination with the locations of individuals who can access those servers. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022) ("Apple had the capability of accessing its own electronic documents from its Austin offices. . . . But we rejected very similar reasoning in *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021)"); *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (ruling a Court should also consider "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval.") Under this factor, Scramoge has not identified the custodians in Austin who have access to the electronic documents in the NDCA servers. Dkt. No. 67 at 4-5. Thus, the Court finds that the electronic documents are more conveniently accessed in the NDCA. This factor weighs in favor of transfer.

### b.  The availability of compulsory process to secure the attendance of witnesses favors transfer.

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s]

heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue*.*" *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Apple argues that Afshin Partovi of Sunnyvale, California is a potential prior art witness subject to the subpoena power of the NDCA. The Court finds Afshin Partovi irrelevant under this factor because Scramoge dropped the patent that Afshin Partovi is relevant to.

Ms. Fan Wang was Apple's power design lead and has relevant knowledge of Apple's power adapter designs. She left apple to start a company called Alpha Cen Inc. Scramoge argues that she resides in Austin, Texas because her LinkedIn profile lists her location as "Austin, Texas, United States." Dkt. No. 67-4. Apple argues that she resides in Shanghai, China because the LinkedIn page lists Alpha Cen Inc.'s location as Shanghai, China. Apple's Reply cites to the Rollins Declaration to confirm Ms. Wang's location in Shanghai. Dkt. No. 72 at 3. Here, the Court finds Mr. Rollins's declaration and his supplemental declaration are wrong in view of Scramoge's evidence that Ms. Wang is in Austin. Ms. Wang's LinkedIn page shows *her personal* location as Austin, Texas and her *company's* location in Shanghai. Dkt. No. 67-4. The Court takes judicial notice that clicking on the "Alpha Cen" logo on the exhibited LinkedIn page navigates to the company's LinkedIn web page, which contains an "About" tab that shows Alpha Cen Inc. has locations in both Shanghai and Austin. *Id.*; Alpha Cen Inc.: About, LINKEDIN, https://www.linkedin.com/company/alpha-cen-inc/about (last visited May 4, 2022). The Court find that Ms. Wang resides in Austin, Texas. Ms. Wang's presence in Austin weighs against transfer and exemplifies how Mr. Rollins lacks the knowledge needed to give the types of statements that Apple relies on. The "discussions with Apple employees" Mr. Rollins used to form the basis of his knowledge must not have included discussions with any of Ms. Wang's power

design colleagues in Austin. Dkt. No. 37-1 ¶ 2. Mr. Rollins must not have been provided any "corporate records" about power design employees in Austin, either. *Id.*

Apple argues that four other prior art witnesses reside in the NDCA. Apple raises these witnesses for the first time in its reply. Scramoge did not seek leave to respond in a sur-reply, move to strike new arguments raised on reply, or otherwise rebut this argument. Thus, the Court finds that four relevant prior art witnesses reside in the NDCA's subpoena power.

In conclusion, the ability to compel four witnesses in the NDCA outweighs the ability to compel Ms. Wang here in Austin. This factor favors transfer.

### c.  The cost of attendance and convenience for willing witnesses slightly favors transfer.

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider all potential materials and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

This factor appropriately considers the cost of attendance of all willing witnesses including both party and non-party witnesses. *In re Pandora*, No. 2021-172, 2021 WL 4772805, at *2-3 (Fed. Cir. Oct. 13, 2021). "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-CV-00194-ADA, 2021 WL 2954095, at *6 (W.D. Tex. Feb. 2, 2021).

"When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). The Federal Circuit has stated that courts should not

apply this 100-mile rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317).

"[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). The Federal Circuit indicated that time away from an individual's home is a more important metric than distance. *Id.* Time and distance frequently and naturally overlap because witnesses usually take more time to travel farther away, thereby increasing the time away from home.

i.  Apple's witnesses identified by Scramoge

Mr. Hartnett lives in Austin and works on the design of in-band communication systems used for the communications between the iPhone inductive charging module and the charger. Dkt. No. 37-1 ¶ 11. Mr. Hartnett thus has relevant information to infringement of the '565 Patent, which claims "a short-range communication antenna" as an element of a wireless power receiver. His knowledge of communications between the iPhone inductive charging module relates to infringement of the claimed antenna. Apple admits that Mr. Hartnett works on a communication system that has power transmit and receive coils but argues that Mr. Hartnett's work is not relevant because his work does not involve an NFC antenna. The Court finds this argument unconvincing because the claim element covers any "short-range communication antenna," not just an NFC antenna.  In a supplemental declaration, Mr. Rollins admits that Mr. Hartnett [---REDACTED---]

Dkt. No. 72-1 ¶ 4. This supplemental declaration supports Scramoge's argument that Mr. Hartnett is relevant to the patented technology.[4]

Scramoge identifies six other relevant Apple witnesses located in Austin, including Alexander Pollard, John Tolman, Matthew Marks, Jeremy Meyers, Zao Yang, and Andrew O'Connell. Alexander Pollard is a global supply manager who "manages the supply of certain components in the iPhone related to inductive charging." Dkt. No. 67-1 ¶ 5; Dkt. No. 67-5. John Tolman is an engineering product manager who worked on wireless charging technology. Dkt. No. 67-6. Matthew Marks is a global supply manager for Apple and has relevant information about Apple's costs of manufacturing the accused wireless chargers. Dkt. No. 67-7; Dkt. No. 67-8 at 7. Jeremy Meyers is a senior manager in battery product development and is responsible for managing technology development programs and new product introduction for battery cell engineering. Dkt. No. 67-9. Zao Yang and Andrew O'Connell are power electronic engineering managers who have relevant knowledge of the benefits of the accused technology. Dkt. No. 67-10; Dkt. No. 67-11.

Apple argues in its Reply that these six witnesses have no relevance to the case. Dkt. No. 72 at 5-6. Apple supports its argument by relying on the Rollins Declaration and the supplemental Rollins Declaration, which this Court found to be unreliable whenever Scramoge has any opposing evidence. Because Scramoge has evidence showing the relevance of these six witnesses, the Court finds that these six witnesses are relevant to this case.

---

[4] Mr. Rollins lacks the credentials to offer an expert opinion about whether in-band communications are related to short range communications. He appears to believe that these are exclusive. *See* Dkt. No. 72-1 ¶ 4. His uninformed belief lacks foundation and is wrong.

In summary, Scramoge identified seven relevant Apple witnesses in Austin who would find travel within the WDTX more convenient than travel to the NDCA.

ii.   Apple's witnesses identified by Apple

Ruben Larsson, Brandon Garbus, and their teams have relevant technical information about the accused products. Dkt. No. 37 at 3-4. Ruben Larsson works in the NDCA, and the location of his team is not provided in the Rollins Declaration. Rollins Decl. ¶ 9.  Brandon Garbus is in San Diego, California, and the location of his team remains unclear.[5] *Id.* ¶ 10.  Mr. Rollins's personal knowledge is that that Mr. Larsson's team and Mr. Garbus's team are not in the WDTX. Rollins Decl. ¶¶ 9-10.

Mr. Rollins, Vitor Silva, and Krista Grewal have relevant, non-technical information. When not serving as Apple's full-time venue witness, Mr. Rollins works as a financial manager and has knowledge of financial information relating to this case. His employees are in the NDCA. Rollins Decl. ¶ 16. Vitor Silva is knowledgeable about Apple's marketing, and he and "his entire team are located in NDCA." *Id.* ¶ 14. Krista Grewal has information about licensing related to this case, and she and "virtually all employees on her team are located in NDCA with the exception of two employees who work remotely in Colorado." *Id.* ¶ 15.

Rohan Dayal is a relevant hardware manager in the NDCA, and team is in the NDCA and in New Zealand. *Id.* ¶ 8. However, he and his team no longer have relevance to this case because Scramoge dismissed the asserted patent that he relates to.

---

[5] Paragraph 10 of the Rollins Declaration cites back to paragraph 8 for the location of the Wireless Charging Technology Group. Paragraph 8 identifies the location of *Mr. Dayal's Apple Watch* team, not the location of the entire Wireless Charging Technology Group and not the location of Mr. Garbus's *iPhone* team.

Neil Shah in the NDCA supervises Alexander Pollard and has knowledge about the supply chain for the accused iPhone and AirPods for at least the same reasons argued by Scramoge.  Dkt. No. 72 at 5-6.  Jeremy Meyers's "entire team is located in NDCA including his managers and direct reports," not including Jeremy Meyers himself.  Dkt. No. 72-1 at ¶ 8.  Jeremy Meyers's teammates are relevant for the same reasons Jeremy Meyers is relevant.

In conclusion, Apple identifies two relevant technical witnesses (Ruben Larsson and Brandon Garbus), five non-technical witnesses (Mr. Rollins, Vitor Silva, Krista Grewal, Rohan Dayal, and Neil Shah), and four teams of unknown sizes (Mr. Rollins's team, Vitor Silva's team, Krista Grewal's team, and Jeremy Meyers's team) who will find it more convenient to travel to the NDCA for trial. Of these, the convenience of Neil Shah and the convenience of Jeremy Meyers's team in the NDCA counterbalance the convenience of Alexander Pollard and Jeremy Meyers in the WDTX.  Without more information about the remaining three teams of unknown sizes, the Court assumes that each team is small and has mostly duplicative knowledge with a named representative member. Still, these teams weigh slightly in favor of transfer.

### iii.  Other witnesses identified by Scramoge

Scramoge identifies the following witnesses who have knowledge relevant to this case: Gerald Padian in New York, Ciaran O'Gara in Ireland, Aoife Butler in Ireland, Sean O'Sullivan in Ireland, Richard Tashjian in New York, Daniel Kim in Virginia, Michael Messinger in D.C., and Khaled Shami in D.C.

Scramoge argues that these witnesses near the east coast and in Ireland would find travel to the NDCA less convenient than to Texas under this Court's reasoning in *CPC Patent Techs. PTY Ltd. v. Apple Inc.*, No. 6:21-cv-00165, Dkt. No. 82 (W.D. Tex. Feb. 8, 2022). The Federal Circuit recently overruled this argument and found that that Apple's witnesses in Florida would

not find it more convenient to travel to Texas than to California despite Texas being halfway between Florida and California. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022). Under the same reasoning, the east coast witnesses and Ireland witnesses identified by Scramoge would find it equally inconvenient to travel to California as they would here.

      iv.   Conclusion

When applying the Federal Circuit's recent ruling, the Court finds Scramoge's eight witnesses on the east coast and in Ireland would be equally inconvenienced regardless of where they travel to. After balancing the remaining witnesses and teams identified Apple and Scramoge, the Court finds that this factor tilts slightly in favor of transfer.

      **d.  All other practical problems that make trial of a case easy, expeditious, and inexpensive is neutral.**

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3. Judicial economy arising from multiple lawsuits filed on the same day in the same venue may be relevant, but such copending suits are not to be over-weighed if they are

also the subject of motions to transfer. *In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021).

Here, the Court has two co-pending cases that involve the same patents and involve similar allegations of infringement of wireless charging technology. *Scramoge Tech. Ltd. v. Samsung Elecs. Co., Ltd.*, No. 6:21-cv-00454-ADA (W.D. Tex. Apr. 30, 2021) involves two overlapping patents. *Scramoge Tech. Ltd. v. Google LLC*, No. 6:21-cv-00616-ADA (W.D. Tex. June 15, 2021) involves three overlapping patents. The Court consolidated claim construction in these three cases. Accordingly, this factor weighs against transfer because keeping the case promotes judicial efficiency. However, the Court does not give this factor dispositive weight.

**2.      The public interest factors are neutral.**

The Court finds the public interest factors neutral overall because the administrative difficulties that weigh against transfer cancel out the greater local interest of the NDCA. The parties agree the remaining two public interest factors are neutral.

> **a.  Administrative difficulties flowing from Court congestion weigh against transfer.**

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). The Court considers the "speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Apple argues that the time to trial is comparable—25.9 moths for NDCA versus 25.3 months for WDTX. Apple notes that this Court has more pending patent cases and speculates that the caseload will delay this Court's ability to hold trials. However, Apple relies on out-of-date statistics in an appellate decision from 2020, before the NDCA felt the full impact of halting trials due to COVID-19. More recent statistics show that the average time to trial in patent cases in the NDCA is now 45.2 months. *Billjco, LLC v. Apple Inc.*, No. 6:21-CV-00528-ADA, 2022 WL 607890, at *8 (W.D. Tex. Mar. 1, 2022). Apple speculates that this Court's larger patent caseload will delay this Court's ability to hold trials. Despite this Court's larger patent caseload, this Court has consistently reached trials faster than the NDCA by reaching trial in about two years from case filings. *See, e.g., MV3 Partners v. Roku*, 6-18-CV-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC*, No. 6-19-CV-00513 (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc.*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google*, 6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, 6-19-CV-663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage v. Nine Energy*, No. 6-20-cv-277 (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6-20-cv-00075 (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6-19-CV-00680 (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial);

*Appliance Computing III, Inc. v. Redfin Corp.*, No. 6-20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial).

In conclusion, this factor disfavors transfer. The Court weighs this as a single factor that does not outweigh multiple other factors.

### b. The local interest in having localized interests decided at home favors transfer.

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). Accordingly, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence in the district. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See id*.

Apple argues that the NDCA has a local interest in this case because Apple is a California corporation, has its headquarters there. Apple argues that "all the Accused Products [were] designed, developed, tested, and marketed in and from Apple's Cupertino headquarters in the NDCA," and that nearly all the research, design, and development occurred in NDCA, with a small amount occurring in San Diego, California, and New Zealand. Dkt. No. 37 at 16.

Scramoge argues that Austin has a local interest because this District houses Apple's second largest U.S. campus with over 6,000 employees here. Scramoge argues that Apple's emphasis on the place where the Accused Products were designed is inconsistent with controlling Fifth Circuit precedent. The Fifth Circuit held that the site of the tort (a car accident) must be given appropriate consideration for this factor. *Volkswagen I*, 371 F.3d at 205. The tort in this case is patent infringement. The Federal Circuit addressed this argument. Judge Moore dissented that Apple committed to expanding up to 15,000 employees in Austin—more than the 8,000 in Cupertino—in addition to retail stores and its own hotel. *In re Apple*, 979 F.3d at 1351 ("The majority dismisses Apple's and its manufacturer's significant presence in the district. Neither this court nor the Fifth Circuit has held that an accused infringer's general presence in a district is irrelevant to the district's local interest in resolving the case."). The majority nonetheless held that Apple lacked a local interest in the WDTX due to "Apple's general contacts with the forum that are untethered to the lawsuit, such as Apple's general presence in WDTX." *Id.* at 1345 (Prost, C.J. and Hughes, J.). This Court cannot overrule the majority opinion of the Federal Circuit.

Scramoge then argues that Apple incorrectly suggested that the Accused Products were designed solely in the NDCA. Scramoge's opposition identifies several people outside of the disputed venues and further identifies Mr. Tolman and Mr. Hartnett as who engineers who developed the features of the accused products. The Court finds that Mr. Tolman and Mr. Harnett

reside in the WDTX and designed features of the accused products. But even so, more of Apple's engineers and their teams are in the NDCA. Thus, the NDCA's local interest outweighs the WDTX's local interest.

In conclusion, this factor favors transfer to NDCA and cancels out the faster time here in the WDTX.

### c.   Familiarity of the forum with the law that will govern the case is neutral.

The parties agree this factor is neutral.

### d.   Avoidance of unnecessary problems of conflict of laws or in the application of foreign law is neutral.

The parties agree this factor is neutral.

## V.   Conclusion

The Court resolves the challenge to the credibility of Mr. Mark Rollins by finding that he has little to no credibility as a declarant. The Court resolved factual disputes against Mr. Rollins whenever Scramoge presented any evidence that contradicted his statements.

The relative ease of access to sources of proof, the availability of compulsory process favor transfer, and the convenience of witnesses slightly favors transfer. The presence of copending cases weighs against transfer. The faster time to trial here cancels out the local interest of the NDCA. All other factors are neutral.

After weighing the four total factors favoring transfer against the two that favor keeping the case, the Court finds that Apple has met its burden to show that the NDCA is clearly more convenient.

The parties are reminded to meet and confer to provide a redacted version of this Order in accordance with the Court's Standing Order Regarding Filing Documents Under Seal.  The parties are reminded not to redact public information, such as public information available on LinkedIn.

The Clerk of the Court is hereby ORDERED to transfer this case to the Northern District of California.

SIGNED this 25th day of May, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE